DAVIS *v.* REED.

4-8272, 4-8273—consolidated                205 S. W. 2d 28

Opinion delivered October 27, 1947.

*J. C. Brookfield,* for appellant.

*W. N. Killough* and *James Robertson,* for appellee.

GRIFFIN SMITH, Chief Justice. When Fred Akins, colored, died in September 1935 he owned a small amount of personal property and 39 acres. Surviving were three

children—Peyton and John Akins, and Artelia Davis—also the widow, Lulu.

In a will, challenged nine years later, Fred devised the realty to Lulu for life with remainder in fee to Peyton. Artelia and John were bequeathed five dollars each.

The will, filed in November 1935, was probated in common form January 13, 1936. Lulu qualified as administratrix January 16. She died in March 1936.

In August 1941 Artelia Davis brought an action in Chancery for partition, alleging that her father died intestate. According to the complaint she and Peyton, in November 1936, executed a trust deed in favor of J. W. Reed to secure $300.84. Reed died and his son John acquired the trust deed rights. In August 1941 Peyton and John Akins executed their quitclaim deed to Reed for an undivided two-thirds of the Fred Akins lands. At the time suit was filed Artelia claimed she and Reed were tenants in common. This action was dismissed in March 1942 for want of prosecution.

In November 1944 Artelia—after failing to get the old suit reinstated—brought a new action in which she was joined by her husband, C. S. Davis. They alleged that John Reed undertook to gain possession of the real property by falsely representing himself to be a creditor, "and caused a copy of the pretended will of the deceased Fred Akins" to be presented for probate, without notice. It is alleged the will was a forgery, intent being to defraud Artelia in respect of her inheritance and to prevent C. S. Davis from collecting the balance due on a note for $400 executed in his favor by Peyton and Artelia March 21, 1940, and secured by Peyton's and Artelia's deed of trust to James Anderson for the use and benefit of C. S. Davis. Prayer was that Reed be required to account for rents and profits, that C. S. Davis have judgment for his debt, that it be declared a lien, and that partition be had.

Reed answered in January 1945, alleging that he purchased the land from Peyton after the latter's mother died. He asserted that if C. S. Davis held a mortgage it

was recorded subsequent to his own evidence of title. It was also alleged that, upon the death of Lulu Akins, Peyton took under his father's will, and that the will had been regularly probated.[1]

The Court held that limitation barred a contest of the will and dismissed the complaint. This, however, was not done until testimony had been heard as to merits of the respective contentions.

The complaint did not allege that fraud was practiced on the Court to secure probation of the will. In the absence of something substantially more than an assertion that the will was forged the judgment gave it verity. "The judgment of a Probate Court, like any other judgment, is conclusive unless fraud is shown in its procurement".—*James* v. *Gibson*, 73 Ark. 440, 84 S. W. 485; *Fidelity Deposit Co.* v. *Fairfield*, 164 Ark. 498, 262 S. W. 322. Fraud, as the basis of an action to impeach a judgment, must be extrinsic of matters originally tried or those that might have been tried.—*Gulley* v. *Budd*, 209 Ark. 23, 189 S. W. 2d 385.

Genuineness of the will offered in the probate proceedings was a matter that could have been litigated, but was not; nor was it sufficient in view of evidence in this record to say there was want of notice. It follows that Peyton acquired the fee.

Testimony amply sustains a finding that the trust deed in Davis' favor was to secure him in the payment of certain debts against the property—taxes, insurance, etc.,—and to reimburse him for advances that might be made to cultivate the land. He was to take charge of the property, rent it to the best advantage, and apply proceeds against expenses. During 1939 and 1940 he collected $200 from Elmer Edwards as rents. Payments made on the property and advances were much less than $200. A fair construction of Davis' testimony is that he was fully compensated and that the deed of trust had served its purpose.

Affirmed.

---

[1] There were informalities and seeming inconsistencies in the relationships mentioned in some of the pleadings, and a sharp distinction is not drawn between Chancery and Probate jurisdiction.